UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DISTRICT

---

REBECCA SONDAY,

        Plaintiff,

  v.

COREY LAKE ORCHARDS
OPERATIONS LLC,

        Defendant.

---

Mark S. Wilkinson (P68765)
PALADIN EMPLOYMENT LAW PLLC
*Attorney for Plaintiff*
251 North Rose Street
Suite 200, PMB № 288
Kalamazoo, MI 49007-3860
(tel.) 269.978.2474
mark@paladinemploymentlaw.com

## COMPLAINT

Plaintiff Rebecca Sonday alleges the following for her complaint against Defendant Corey Lake Orchards Operations LLC.

### NATURE OF THE CASE

1. This case involves a long history of harassment, intimidation, and stalking by a co-worker (then former employee) against Plaintiff Rebecca Sonday.

2. Defendant's half-hearted efforts to end the harassment were woefully inadequate and unreasonable by any measure.  Sonday complained about the harassment, but Defendant did little to stop it (and for the little it did do, Defendant knew what it had done was not working and entirely inappropriate.)

3. Then, inexplicably, Defendant decided it was just "too burdensome" to try to protect Sonday in any way from her harasser. The harasser was also the son of the owner of the Defendant company.

4. Given that her employer would not protect her from the harassment, Sonday got a personal protection order against her harasser. Defendant then fired Sonday the day she appeared in court in connection with the personal protection order and in retaliation for seeking protection of the courts.

5. Defendant's conduct violates Michigan's Elliott-Larsen Civil Rights Act and Whistleblowers' Protection Act. Defendant also violated the Fair Labor Standards Act by failing to pay Sonday the minimum wage for all the hours that she worked.

6. Sonday suffered damages as a result of Defendant's statutory violations that include, but are not limited to, back wages, liquidated damages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

## PARTIES, JURISDICTION, AND VENUE

7. Plaintiff Rebecca Sonday is an individual person.

8. Defendant Corey Lake Orchards Operations LLC is a limited liability company organized under the laws of the State of Michigan. The company maintains its principal place of business in St. Joseph County, Michigan where it operates a farm and agricultural enterprise.

9. The Court has personal jurisdiction over Defendant under Michigan Compiled Laws Sections 600.711 and 600.715. FED. R. CIV. P. 4(k)(1)(A).

10. The Court has original subject matter jurisdiction over the claims asserted in the complaint under the Fair Labor Standards Act in accordance with Title 28 of the United States Code, Section 1331, because those claims arise under federal law.

11. The Court has supplemental jurisdiction over the state law claims asserted in the complaint in accordance with Title 28 of the United States Code, Section 1367, because those claims are so related to the claims over which the Court has original jurisdiction that they form part of the same case and controversy.

12. Venue is appropriate in this judicial district in accordance with Title 28 of the United States Code, Section 1391(b).

## GENERAL ALLEGATIONS

*Defendant Fails to Pay Sonday At Least the FLSA Minimum Wage For All Hours She Worked*

13. Plaintiff Rebecca Sonday worked for Defendant managing its alcoholic cider (or sometimes called "hard cider") and Defendant's organic farming operations. Sonday began her employment for Defendant in October 2014.

14. Defendant paid Sonday a set amount each month.

15. In 2016 and 2017, Defendant paid Sonday $1,600 per month. From January 1, 2018 until the termination of her employment on May 15, 2019, Defendant paid Sonday $2,100.

16. Defendant does not qualify for an exemption from the requirement under the FLSA that it must pay Sonday at least the federally mandated minimum wage ($7.25) for all the hours that she worked.

17. Defendant failed to pay Sonday $7.25 or more for all the work hours that she performed for Defendant each week.

18. Sonday's job with Defendant was incredibly labor intensive and the nature of her work required a significant time commitment from her each week. Sonday often worked 80 hours per week or more for Defendant.

*Sonday Is Harassed Because of Her Gender and
Defendant Does Not Take Appropriate Action to End It*

19. In April 2014, Sonday moved to a house provided by Defendant to live and work at Defendant's farm. The farm house Sonday lived in was located on Defendant's property and Sonday resided alone there by herself.

20. Another employee of Defendant's, Joseph (Jay) Kitzinger, had previously sexually assaulted Sonday before the two of them worked together for Defendant.

21. Then, once working together, over the next five years, Kitzinger engaged in a near-constant campaign of harassment and intimidation toward Sonday.

22. To say the least, the harassment had the purpose and effect of substantially interfering with Sonday's employment and created an intimidating, hostile, and offensive working environment for her.

23. Some examples of Kitzinger's harassment include, but are not limited to:

- Parking his vehicle in front of Sonday's house in her driveway late at night (*e.g.*, 2:00 a.m.) and shining his vehicle's headlights into her house.

- Walking around the outside of Sonday's home at night with a flashlight shining lights into her home and, in particular, into her bedroom.

- Telling Sonday she is not allowed to have guests over when she had done so the night before—letting Sonday know that he had been watching her and observing her private activities.

- Entering Sonday's home uninvited and unannounced late at night (*e.g.*, 2:00 a.m.).

- Standing near and hovering over Sonday at work for no reason for long stretches of time.

- Screaming at Sonday in angry outbursts during work hours and in work areas in front of coworkers and customers.

- Threatening Sonday (multiple times) and telling her that he planned to burn her house down with her in it.

- Swerving his vehicle at Sonday while she walked around the farm property while he drove at a high rate of speed around her.

- Calling her repeatedly and harassing her by telephone.
- Slowly driving by Sonday's house, work areas, and wherever she might be on the farm, and then making u-turns and coming back and doing the same thing over and over again.

24. Sonday complained to Defendant's owner, Elizabeth Hubbard, about Kitzinger's harassment. Elizabeth Hubbard is also Kitzinger's mother and Sonday's aunt.

25. Defendant then imposed a rule that Kitzinger could not remain at the farm after normal business hours without a legitimate business reason.

26. Kitzinger did not abide by Defendant's rules and continued to harass Sonday in the same pattern and ways described above.

27. Sonday continued to complain to Defendant about Kitzinger's harassment and the fact that he would not abide by the rules Defendant created for him.

*Kitzinger Continues to Harass Sonday While Working At the Farm As a Contractor*

28. By the end of 2014, Kitzinger had left the farm and was not working as a direct employee for Defendant.

29. Sonday requested that Defendant continue to restrict Kitzinger's access to the farm and that if he wanted to return to the farm for some reason after business hours, then Sonday must receive advance notice of that (from Defendant) and Kitzinger could not drive around her residence (at any time) or otherwise be on the farm after business hours.

30. Kitzinger did not abide by Defendant's rules and continued to harass Sonday in the same pattern and ways described above. Sonday again complained to Defendant about the harassment.

31. In 2015, Defendant hired Kitzinger back to work at the farm as a contractor.

32. The same pattern of harassment once again resumed.

33. Eventually, Kitzinger quit working as a contractor for Defendant. Kitzinger's harassment of Sonday, however, continued and it began to get worse.

### *Kitzinger Leaves the Farm As a Worker, But Continues to Harass Sonday Wherever She Went*

34. By 2016, Kitzinger now stalked and harassed Sonday wherever she went, even following her to a neighbor's house when house sitting and engaging in the same pattern of harassment there.

35. Sonday (understandably) did not feel safe in her house so she had friends and family stay with her many nights.

36. Sonday continued to complain about Kitzinger's harassment to Defendant, and Defendant refused to intervene or take appropriate action to end it. (Again, Kitzinger is Hubbard's son, and Hubbard owns and operates the farm.)

37. Sonday informed Defendant that she cannot endure the harassment anymore and will either have to obtain a restraining order against Kitzinger or quit her job (or both).

38. In April 2016, and in response to Sonday's ultimatum, Defendant imposed additional rules for Kitzinger: (a) he cannot come to the farm unannounced; (b) he cannot be at the farm without a legitimate business reason; (c) and he cannot be at the farm unaccompanied by one of his parents or his wife; and (d) he cannot be at the farm after normal business hours.

39. Though not ending completely, the harassment from Kitzinger did temper a bit for a few months.

40. But, later in 2016, Kitzinger's pattern of harassing behavior started right back up again and continued throughout 2017 and 2018.

41. Sonday once again complained to Defendant about the harassment during this time. She also informed Defendant that she had retained a lawyer and planned to obtain a personal protection order against Kitzinger.

42. This seemed to quell Kitzinger's harassment. But, like before, the reprieve was only temporary and lasted just a few weeks. Kitzinger's harassment of Sonday resumed again as it had before.

43. In September 2018, Sonday also learned that Kitzinger—during roughly the same period that he was harassing her—had sexually assaulted two other women living nearby and harassed them in the same way that he had done to Sonday.

*Defendant Rescinds Any Rules to Protect Sonday
from Kitzinger Because They Were "Too Burdensome"*

44. Sonday continued to complain to Defendant about Kitzinger and pleaded with Defendant to take actions to protect her in the workplace.

45. But now, instead of taking further steps to restrict or block Kitzinger's access to the farm, in March 2019, Defendant removed any access limits or notice requirements for Kitzinger and he could now come and go whenever and wherever he wanted (even in areas where Sonday lived and worked, like her residence or her office).

46. Defendant claimed it was "too burdensome" to require advanced notice of Kitzinger's presence at the farm and refused to restrict his access to Sonday in any way.

47. Sonday objected to Defendant's decision to allow Kitzinger unfettered access to the farm, explained how unsafe it made her feel, and provided Defendant with a log of some (but by no means all) of the harassing behavior Kitzinger had engaged in.

48. Defendant responded by telling Sonday that she (the victim) needed to accommodate

and tolerate Kitzinger's harassing behavior and that if she wanted to avoid contact with Kitzinger, then it was up to her to figure something out and there was nothing Defendant was willing to do about it.

49. Defendant further made clear to Sonday that her job was contingent on accommodating and tolerating Kitzinger's behavior and not pursuing a personal protection order or otherwise taking legal action against Kitzinger to protect herself against him.

### *Sonday Obtains a PPO Against Kitzinger*

50. After much consideration—and particularly in light of the trail of empty promises from Defendant and in fear of her safety and the safety of others given that Kitzinger had harassed and sexually assaulted other local women—Sonday pursued and obtained a personal protection order against Kitzinger.

51. In early April 2019, Sonday reported Defendant and Kitzinger's unlawful activities to the St. Joseph County Sheriff's Department.

52. Later in April 2019, Sonday petitioned the St. Joseph County Circuit Court to enter *an ex parte* personal protection order against Kitzinger, which the court granted.

53. Kitzinger filed objections to the entry of the personal protection order against him.

54. The St. Joseph County Circuit Court scheduled a hearing on Kitzinger's objection for April 25, 2019 and it requested that Sonday participate in that hearing. Sonday participated in the April 25 hearing and she reported Defendant and Kitzinger's unlawful activities to the court.

55. Unable to complete the proceedings on April 25, the St. Joseph County Circuit Court continued the hearing until May 15, 2019 and requested that Sonday attend that hearing. Sonday participated in the May 15 hearing and again reported Defendant and Kitzinger's

unlawful activities to the court.

56. The St. Joseph County Circuit Court ultimately entered a personal protection order against Kitzinger.

57. Defendant, after learning about the proceedings involving the son of the owner of the company, decided to make good on its previous threats and terminated Sonday's employment on May 15, 2019.

58. The termination of Sonday's employment occurred roughly one hour before the May 15 hearing on Kitzinger's objections to the personal protection order against him (the son of the owner of the company).

59. Defendant told Sonday that the reason for the termination of her employment was her continued advocacy for her safety and for a harassment-free workplace.

## COUNT 1
### FAILURE TO PAY THE MINIMUM WAGE IN VIOLATION OF THE FAIR LABOR STANDARDS ACT

60. Sonday repeats and incorporates all the previous allegations in her complaint.

61. Sonday often worked more than 80 hours per week on behalf of Defendant.

62. Defendant paid Sonday a monthly salary.

63. The monthly salary Defendant paid Sonday did not amount to the hourly equivalent of the federal minimum wage ($7.25).

64. Defendant did not pay Sonday at least the federal minimum wage ($7.25) for all the hours that she worked each week.

65. Defendant willfully failed to pay Sonday the minimum wage required by the FLSA.

66. Defendant knew that (or had a reckless disregard for whether) the FLSA required it

to pay the minimum wage required by the FLSA to Sonday.

67. Sonday has retained an attorney to render legal assistance to her in this action so that she may vindicate the impairment of her rights under the FLSA.

68. By not paying Sonday at least the hourly minimum wage of $7.25 for each hour that she worked, Defendant has violated the Fair Labor Standards Act.

69. Sonday suffered damages as a result of Defendant's violations of the Fair Labor Standards Act, that include, but are not limited to, back wages, liquidated damages, attorney's fees, and litigation costs.

## COUNT 2
### GENDER HARASSMENT IN VIOLATION OF
### MICHIGAN'S ELLIOTT-LARSEN CIVIL RIGHTS ACT

70. Sonday repeats and incorporates all the previous allegations in her complaint.

71. Sonday was subjected to communications and conduct based on her gender (female).

72. The communications and conduct was hostile and unwelcome.

73. Sonday was subjected to a hostile work environment and otherwise treated differently than other employees because of her gender (female).

74. Defendant was legally responsible for the work environment that was hostile to Sonday because of her gender.

75. Sonday's gender was one of the motives or reasons which made a difference in Defendant's decision to allow the harassment to continue and its failure to take appropriate measures to end it.

76. Sonday suffered damages as a result of Defendant's violations of Michigan's

Elliott-Larsen Civil Rights Act, that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

### COUNT 3
### GENDER DISCRIMINATION IN VIOLATION OF MICHIGAN'S ELLIOTT-LARSEN CIVIL RIGHTS ACT

77. Sonday repeats and incorporates all the previous allegations in her complaint.

78. Defendant subjected Sonday to different terms and conditions of employment than male employees.

79. Defendant terminated Sonday's employment.

80. Sonday's gender was one of the motives or reasons which made a difference in Defendant's decision to treat her differently in connection with the terms and conditions of her employment and the decision to end her employment.

81. Sonday suffered damages as a result of Defendant's violations of Michigan's Elliott-Larsen Civil Rights Act, that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

### COUNT 4
### RETALIATION IN VIOLATION OF MICHIGAN'S ELLIOTT-LARSEN CIVIL RIGHTS ACT

82. Sonday repeats and incorporates all the previous allegations in her complaint.

83. Sonday engaged in activity protected by Michigan's Elliott-Larsen Civil Rights Act in that she, among other things, opposed the repeated harassment, discrimination, and violations of the Act that she endured.

84. Defendant knew about Sonday's opposition and protected activity.

85. Defendant treated Sonday differently in connection with the terms and conditions

of her employment and it ended her employment.

86. There was a causal connection between Sonday's protected activity and the adverse employment actions Defendant took against her.

87. Sonday suffered damages as a result of Defendant's violations of Michigan's Elliott-Larsen Civil Rights Act, that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

### COUNT 5
#### RETALIATION IN VIOLATION OF MICHIGAN'S WHISTLEBLOWERS' PROTECTION ACT

88. Sonday repeats and incorporates all the previous allegations in her complaint.

89. Sonday engaged in protected activity under Michigan's Whistleblowers' Protection Act by (a) reporting Defendant and Kitzinger's unlawful activities to an attorney licensed in Michigan, the St. Joseph County Sheriff's Department, the St. Joseph County Circuit Court, and other law enforcement officials, and (b) by participating in proceedings related to the personal protection order she sought against Kitzinger.

90. Sonday also engaged in protected activity under the Whistleblowers' Protection Act when the St. Joseph County Circuit Court requested that she participate in hearings and court action in connection with the personal protection order.

91. Defendant treated Sonday differently in connection with the terms and conditions of her employment and terminated her employment.

92. The adverse employment actions Defendant took against Sonday were because of her protected activity.

93. Sonday suffered damages as a result of Defendant's violations of the Whistleblowers'

Protection Act, that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

## JURY DEMAND

94.  Sonday demands a trial by jury on all issues so triable. FED. R. CIV. P. 38(b).

## RELIEF REQUESTED

95.  Plaintiff Rebecca Sonday requests that the Court enter a judgment in her favor and against Defendant in an amount that will fully and fairly compensate her for all of her damages, losses, expenses, back wages, liquidated damages, emotional distress, attorney's fees, litigation costs, and interest.

96.  Sonday filed a charge of employment discrimination with the United States Equal Employment Opportunity Commission and requests that the Court allow her to seek a right to sue notice from the EEOC as soon as possible so that she may consolidate her claims under Title VII of the Civil Rights Act of 1964 with the claims asserted in this complaint.

97.  Sonday also requests that the court grant her any additional relief, both legal and equitable, as the Court determines to be appropriate and just under the circumstances.

REBECCA SONDAY

Dated:  August 9, 2019          By:   /s/  Mark S. Wilkinson

Mark S. Wilkinson (P68765)
*Attorney for Plaintiff*
PALADIN EMPLOYMENT LAW PLLC
251 North Rose Street
Suite 200, PMB № 288
Kalamazoo, MI 49007-3860
(tel.) 269.978.2474
mark@paladinemploymentlaw.com